UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:09-CV-147-M

LUCIEN GOVAERTS                                            PLAINTIFF

v.

SUNTEC INDUSTRIES INC.,                            DEFENDANT

v.

MILTON BROWN                              THIRD-PARTY DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a Fed. R. Civ. P. 12(b)(6) motion by Plaintiff Lucien Govaerts to dismiss Defendant Suntec's counterclaims for breach of contract and indemnity, breach of fiduciary duty, fraud, and attorney's fees, as well as Third-Party Defendant Brown's counterclaim for contractual indemnity. Fully briefed, the matter is ripe for decision. For the reasons that follow, Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

This suit is about a severance agreement. In 1984, the Hydraulics Division of the Sundstrand Corporation became Suntec USA. Lucien Govaerts, the Managing Director of the Hydraulics Division at the time, was hired on as the new President of Suntec France. As part of that process, Govaerts allegedly entered into an agreement with Suntec USA, the parent company of Suntec France, through its then sole director and shareholder Milton Brown, whereby he would be paid the "severance benefits, if any, to which [he] would have

been entitled under applicable French law had [his] employment agreement with Sundstrand . . . been taken over by Suntec . . ." (DN 1, Exhibit A). In 2000, Govaerts was elected President and Chief Operating Officer of Suntec USA. His employment was terminated by unanimous vote of the board of directors in 2007

After his termination, Govaerts sought payment from Suntec pursuant to the 1984 severance agreement with Brown. When Suntec refused to pay, Govaerts brought this suit for breach of contract. Suntec has since counterclaimed for breach of contract based on a Stock Purchase Agreement ("SPA") that Govaerts signed when Suntec USA merged with Saint-Nom, Inc., a Delaware Corporation, in 2001; for breach of fiduciary duty for Govaerts' alleged failure to disclose the severance agreement at the time the SPA was signed and for the past 23 years as a Suntec employee; and for common law fraud. Suntec has also advanced a claim against Brown as a third-party defendant for breach of the SPA; and Brown, in turn, has asserted a counterclaim against Govaerts, seeking indemnity pursuant to a "Certificate" between the two former executives. Govaerts now moves to dismiss the counterclaims.

## II. STANDARD

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court "must construe the complaint in the light most favorable to plaintiff," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true[,]" id., and determine whether the "complaint states a plausible claim for relief[,]" Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct.

1937, 1950 (2009). Under this standard, the plaintiff must provide the grounds for its entitlement to relief, Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001), which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct . . . ." Id. at 1949, 1950. Instead, the allegations must "'show[] that the pleader is entitled to relief.'" Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DISCUSSION

A. Suntec's Counterclaims

1. Breach of Contract and Indemnity

Suntec claims that Govaerts breached the representation in Section 5.17 of the SPA that "no current or former officer . . . has any material agreement or business arrangement with the Company or any subsidiary . . ." by failing to disclose the severance agreement. (SPA, p. 22). Govaerts argues that this claim should be dismissed because the Section 5.17 respresentation was not made by Govaerts but only by the "Company" and "Principal Seller"; because any indemnity he owed to Suntec expired more than five years ago pursuant to Section 11.1(a); and because the severance agreement was not "material" under 5.17 since it was less than .5% of the 35 million dollar purchase price and less than the $200,000

3

"basket" amount necessary for indemnification. Suntec counters that the 5.17 representations and warranties apply not just to the "Company" and the "Principal Seller" but also to Govaerts as a "Seller"; that the claim should not be dismissed as untimely because equitable tolling may apply; and that the agreement is "material" because it is at least 80% of the indemnity basket amount and agreements for less money, including the Wadlington deferred compensation agreement, were listed on schedule 5.17 to the SPA. Because the Court concludes that the counterclaims are time-barred pursuant to the SPA's indemnity provision, it will dismiss Count I.

Suntec's "exclusive remedy for breaches of [the Stock Purchase] Agreement (including any covenant, obligation, representation or warranty contained in this Agreement …) or otherwise in respect of the sale of the Shares contemplated [by the Stock Purchase Agreement]" is under the indemnification provisions in Section 11.5. (Stock Purchase Agreement, § 11.5(b)). Govaerts argues that any such claim against him is time-barred because under Section 11.1(b), the indemnification he agreed to provide in Section 11.1(a) terminated eighteen months after the Closing Date, or more than five years prior to this suit. Suntec counters that equitable tolling should save its claim because Govaerts allegedly committed fraud in concealing the supposedly-illegal-under-French-law severance agreement from Suntec. At the least, Suntec contends, the Court should not foreclose its claim without allowing discovery because equitable tolling is a fact-intensive inquiry. Govaerts responds that equitable tolling is wholly inapplicable because the parties are highly sophisticated and the SPA would have contained a tolling provision if that is what the parties intended, and it

did not.

The Court substantially agrees with Govaerts. Section 11.1(b) of the SPA states that "[t]he indemnification provided for in Section 11.1(a) shall terminate eighteen months after the Closing Date (and no claims shall be made by any Buyer Group Member under Section 11.1(a) thereafter), except that indemnification by the Principal Seller shall continue as to . . . . the representations and warranties of the Company and Principal Seller contained in . . . 5.17, which shall survive indefinitely." (SPA, p. 42). Because Govaerts is not the Principal Seller, his obligation under Section 11 ended eighteen months after the Closing Date, and nothing in the language of the SPA suggests that the parties intended some sort of discovery rule or equitable tolling to extend that deadline. On the contrary, the clear intent of the parties is that Govaerts' liability was to be strictly limited to those eighteen months: "the representations and warranties contained in Article V . . . shall terminate on the eighteen month anniversary of the Closing Date . . . [and] no claim shall be made for breach of any representation or warranty contained in Article V . . . after the date on which such representations and warranties terminate." (SPA, p. 47, Section 13.1). The Court declines the invitation to rewrite the contract through equittable tolling. Cf. Allen v. Unionmutual Stock Life Ins. Co., 989 F.Supp. 961, 966 (S.D. Ohio 1997) (refusing to engraft a state discovery rule onto a contractual limitations period).

2. Breach of Fiduciary Duties

Suntec's claim for breach of fiduciary duty is based on the idea that Govaerts purposefully hid the severance agreement for over twenty-three years and, in so doing,

potentially undermined the financial stability of Suntec and put Suntec in jeopardy under French law. Govaerts argues that this claim should be dismissed because it is barred by the SPA's indemnity provision; he did not and could not conceal the letter because Brown, the president of Suntec, signed the letter; the claim is insufficiently pled; and the fact that the letter may be "completely null" under French law, is, if anything, a defense to his claim for breach of the severance agreement rather than grounds for Suntec's alleged breach of fiduciary duty claim because if the agreement is void *ab initio* Suntec has not been damaged. Suntec counters that its claim for breach of fiduciary duty should not be dismissed because the indemnification clause of the SPA does not apply and because Brown's knowledge of the agreement is not imputable to Suntec since the agreement was an illegal, self-dealing contract. (Response, pp. 3-4, 21). The Court considers the arguments below.

a. Indemnity as Exclusive Remedy Provision

Govaerts first argues that the breach of fiduciary duty claim should be dismissed because it is barred by the SPA's indemnity provision, which states that "indemnification shall be the sole remedy for breaches of this [Stock Purchase] Agreement." (SPA, 11.5(b)). He cites CSI Inv. Partners II, L.P., 507 F.Supp.2d 384 (S.D.N.Y. 2007) as standing for the proposition that "New York law gives effect to the limitations set forth in such a provision, and requires that fiduciary counterclaims must be brought as indemnification claims pursuant to the parties' exclusive remedy clause." (Brief, p. 9). In that case, a counterclaimant brought a claim for breach of a stock purchase agreement and for breach of a fiduciary duty, and the counterdefendant moved to dismiss the fiduciary claim as barred by the stock purchase

agreement's exclusive remedy clause. The counterclaimant argued "that '[t]he fiduciary duty claims . . . do not relate to the Agreement [because] [counterdefendants] would have breached their fiduciary duties regardless of whether Sellers breached the representations and warranties in the SPA.'" Id. at 434. The district court, as Govaerts notes, rejected this argument. It found that the "contention that the fiduciary duty claims are unrelated to the SPA is specious" because "[h]ad the parties not executed the SPA, [counterclaimant] would have suffered none of the damages which it alleges gave rise to its fiduciary duty counterclaim in the first instance." Id.

Suntec maintains this case is different. Unlike the plaintiff in CSI Inv. Partners II, L.P., Suntec contends, its damages "would have occurred regardless of the existence of the Stock Purchase Agreement." (Response, p. 17). This is because the breach of fiduciary duty claim both precedes and post-dates the SPA and applies to Suntec directly not just to Suntec-as-assignee-of-Saint-Nom, i.e., the claim "at least partially rests on Govaerts' intentional secreting of the self-dealing, illegal, agreement from the other directors of both Suntec USA and Suntec France . . . [which are] separate and apart from Govaerts' intentional omission to Saint-Nom about the existence of the Severance Agreement during the negotiations of the [SPA]." Id. The Court agrees with Suntec. Insofar as Suntec's claim is based on Govaerts' alleged breach of fiduciary duty for failing to disclose the agreement as an employee of Suntec, it is not barred by the exclusive remedy provision of the SPA because Suntec would have suffered the alleged damage whether the SPA existed or not.

7

b. Brown's Knowledge

Govaerts' second argument is that he could not have breached his fiduciary duty since Suntec knew of the agreement because Brown signed it. Suntec counters that Brown's knowledge is irrelevant because it cannot be imputed to Suntec given that the agreement was an illegal, self-dealing contract. The Court again agrees with Suntec. In light of the allegations that Govaerts and Brown knowingly entered into a severance agreement that violated the French Code of Commerce and then knowingly hid that agreement from Suntec's other directors, dismissal of the claim based on Brown's knowledge of the agreement is inappropriate. See, e.g., In re HealthSouth Corp. S'holders Litig., 845 A.2d 1096 (Del. Ch. 2003) (rejecting imputing knowledge where fiduciary "is engaged in the perpetration of an independent fraudulent transaction. . . and it would be to his interest to conceal it"); American Standard Credit, Inc. v. National Cement Co., 643 F.2d 248 (5th Cir. 1981) ("where an officer is dealing with the corporation in his own behalf, or is . . . interested in a transaction adversely to the corporation, knowledge possessed by him in the transaction is not imputable to the corporation").

c. Pleading, Nullity, and Damages

The last argument Govaerts makes with respect to the breach of fiduciary duty claim is that the alleged nullity of the agreement under French law is either insufficiently pled or better understood as a defense to his claim for breach of the severance agreement, i.e., "Suntec USA does not allege facts supporting its conclusion that the Letter Agreement is governed by French law" and "an allegedly void contract is not properly asserted as a

counterclaim for breach of fiduciary duty" because "Suntec has incurred no damages." (Brief, p. 11; Reply, p. 9). Because the point of Suntec's allegation that the "sole purpose of the document was to defy the French Code of Conmmerce illegally" (Amend. & Rest. Ans. and Countercl., ¶ 80) was to show that Govaerts breached his fiduciary duty to disclose the agreement to the company, it does not matter whether the agreement was actually unlawful under French law. Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 546 (1928) (Cardozo, C.J.) ("A [fiduciary] is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive . . ."); see also Guth v. Loft, Inc., 5 A.2d 503, 510 (Del. 1939) ("The occasions for the determination of honesty, good faith and loyal conduct are many and varied, and no hard and fast rule can be formulated."). And if the agreement was void *ab initio*, Govaerts is correct that that is an affirmative defense to his breach of contract claim. However, if the agreement is not void, the allegations of the counterclaim are sufficient to assert a breach of fiduciary duty claim.

3. Fraud

Suntec has also advanced two fraud claims: the first claim involves Govaerts' failure to disclose the agreement with Brown "in 2001, while Govaerts was a Director and President of both companies" and the second "alleges that the willful concealment occurred over 23 years, while Govaerts served as President and Director of the companies."[1] (Response, p. 25,

---

[1] Under Kentucky law, the elements of fraud are: (1) a material misrepresentation, (2) which is false, (3) known to be false or made recklessly, (4) made with inducement to be acted upon, (5) acted in reliance thereon, and (6) causing injury. United Parcel Service Co. v. Rickert, 996 S.W.2d 464, 468 (Ky. 1999).

9

citing Amend. & Rest. Ans. and Countercl., ¶¶ 85, 93). Govaerts argues that both claims are barred by the economic loss doctrine because they are intertwined with the SPA breach of contract claim; that they fail because they are not pled with specificity pursuant to Fed. R. Civ. P. 9(b); and that Suntec has not and cannot allege the necessary element of justifiable reliance because the Stock Purchase Agreement "supersede[d] all other prior agreements or understandings. . ." and therefore made reliance on the misrepresentation unreasonable. (Brief, p. 18) (quoting SPA § 13.7). Suntec counters that the economic loss doctrine does not apply in Kentucky; that if it does there is a fraud exception; that it has adequately pled fraud; and that the merger and integration clauses do not bar the fraud claims. The Court considers the arguments in turn.

a. Economic Loss Doctrine

Suntec's first argument is that the economic loss doctrine does not apply in Kentucky. "[T]he economic loss rule has evolved into a modern, general prohibition against tort recovery for economic loss." Presnell Const. Managers, Inc. v. EH Const., LLC, 134 S.W.3d 575, 583-84 (Ky. 2004) (Keller, J. concurring) (quotation omitted). "Where tort law, primarily out of a concern for safety, fixes the responsibility for a defective product directly on the parties responsible for placing the product into the stream of commerce, contract law gives the parties to a venture the freedom to allocate risk as they see fit. Were there no economic loss rule, 'contract law [might] drown in a sea of tort.'" Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc., 276 F.3d 845, 848 (6th Cir. 2002) (quotation omitted). Because both the Sixth Circuit and this Court have consistently applied the rule to business

purchases in the belief that Kentucky courts would apply it, the Court finds Suntec's contention that the economic loss doctrine does not apply unpersuasive. See, e.g., Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc., 276 F.3d 845, 849 (6th Cir. 2002); Miller's Bottled Gas, Inc. v. Borg-Warner Corp., 955 F.2d 1043, 1050 (6th Cir. 1992); Gooch v. E.I. Du Pont de Nemours & Co., 40 F.Supp.2d 863, 874-75 (W.D. Ky. 1999).

      b. Fraud Exception

Suntec's second argument is that its fraud claims are not barred by the economic loss doctrine because "[Kentucky's] adoption of the economic loss doctrine would include a fraud exception." (Response, p. 26). Suntec's Count III claim is that Govaerts fraudulently induced Saint-Nom into signing the SPA by "intentionally represent[ing] to Saint-Nom that no material agreement among the Directors of Suntec USA or its affiliates existed during the negotiations of the Stock Purchase Agreement . . . . [while knowing] that this representation was false and that the alleged severance agreement existed." (Amend. & Rest. Ans. and Countercl., ¶¶ 85-86). The Court concludes that this claim is barred by the economic loss doctrine because, as in Strathmore Web Graphics v. Sanden Machine, Ltd., 2000 WL 33975406 (W.D. Ky. 2000), the "allegedly fraudulent representation[] relate[s] solely to the quality or character [of the goods] . . . [and that] representation[] appears as [a] term[] in the contract and cannot be distinguished from the [contract]." Id. at *3. Govaerts made the misrepresentation in the SPA concerning the character of the stock, i.e., that there were no "material" insider agreements affecting the stock's value, and the parties expressly provided for a remedy for such misrepresentation in the contract. Cf. id. (explaining that "where there

11

are no fraudulent representations alleged that are distinct from the breach of contract or warranty claims. . . the fraud claim 'falls squarely within the ambit of the economic loss doctrine.'") (quotation omitted).

Suntec's Count IV fraud claim is not for fraud in the inducement but for "willful concealment [of the severance agreement] over 23 years, while Govaerts served as President and Director of the companies" and negotiated "other lucrative compensation options" with Suntec, including a "retirement bonus of €89, 148."(Response, p. 25, citing Amend. & Rest. Ans. and Countercl., ¶¶ 85, 93-94). The Court finds that this fraud claim is not barred by the economic loss doctrine because it is independant of the contract claim. Cf. Westlake Vinyls, Inc., 518 F. Supp. 2d 955, 968 (W.D. Ky. 2007) (holding that "[t]he economic loss doctrine precludes a plaintiff from recovering under a fraud theory when that claim is intertwined with a breach of contract claim."); Highland Stud Int'l v. Baffert, No. 00-261-JMH, 2002 WL 34403141, *4 n.4 (E.D. Ky. May, 16, 2002) (finding that when a party alleges fraud and misrepresentation in the performance of a contract, the fraud claims are barred when they "are intertwined with the plaintiffs' breach claim."). Neither Govaerts' alleged duty to disclose the severance agreement nor his alleged misrepresentation by omission are "intertwined" with Suntec's claim for breach of the SPA.

    c. Fed. R. Civ. P. 9(b)

Govaerts next argues that Suntec's fraud claims are insufficiently pled under Fed. R. Civ. P. 9(b). Rule 9(b) provides that when alleging fraud in a complaint, "a party must state with particularity the circumstances constituting fraud or mistake." Id. "In ruling upon a

motion to dismiss under Rule 9(b) for failure to plead fraud 'with particularity,' a court must factor in the policy of simplicity in pleading which the drafters of the Federal Rules codified in Rule 8. Rule 8 requires a 'short and plain statement of the claim,' and calls for 'simple, concise, and direct' allegations." Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674, 679 (6th Cir. 1988) (quotations omitted). Because the two rules must be read in harmony, it is "inappropriate to focus exclusively on the fact that Rule 9(b) requires particularity in pleading fraud. This is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules." 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1298, at 407 (1969). "At a minimum, the Sixth Circuit requires the allegations to contain the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." Our Lady of Bellefonte Hosp., Inc. v. Tri-State Physicians Network, Inc., 2007 U.S. Dist. LEXIS 72286, at 16 (E.D. Ky. 2007).

The Court finds that Suntec has satisfied the standard here. In its Count IV fraud claim, Suntec states that Govaerts' fraudulent misrepresentation was his failure to disclose the existence of the severance agreement over the course of 23 years of employment with Suntec during which time he negotiated "other lucrative compensation options" with Suntec, including a "retirement bonus of €89, 148." (Amend. & Rest. Ans. and Countercl., ¶ 94); that Govaerts was aware of the severance agreement; that he was aware of the French law prohibiting severance compensation to directors; that he entered into the agreement knowing it violated French law; and that Suntec was injured because it "now allegedly owes a

13

significant debt to Govaerts, which may render Suntec USA financially unstable." (Amend. & Rest. Ans. and Countercl., ¶¶ 45, 47, 59, 86, 89-90, 92-94, 96-98). These allegations are sufficiently definite to satisfy 9(b).

d. Merger and Integration Clauses and Reasonable Reliance

Govaerts also argues that Suntec's fraud claims are barred by the merger and integration provisions of the SPA and that there can be no reasonable reliance. The Court disagrees. In Kentucky, merger and integration clauses have no preclusive effect on misrepresentation claims. See Radioshack Corp. v. Comsmart, Inc., 222 S.W.3d 256, 259 (Ky. Ct. App. 2007) (explaining that "neither the parol evidence rule nor the merger and integration clauses in the contract precluded [the plaintiffs] from presenting evidence on their misrepresentation claim."). As for reliance, it is true that where a contractual provision directly and unambiguously contradicts the alleged misrepresentation, reliance on the misrepresentation is unreasonable. See e.g., Davis v. Siemens Med. Solutions USA, Inc., No. 3:04CV-195-MO, 2007 WL 710133, at *4 (W.D. Ky. Mar. 6, 2007); Dyncorp v. GTE Corp., 215 F. Supp. 2d 308, 319 (S.D.N.Y. 2002). But that is not this case. Govaerts simply relies on the merger and integration language that Suntec "disclaim[ed] all other representations and warranties" and, as just mentioned, that is doubly insufficient. (SPA, p. 52).

4. Attorney's Fees

Last is Govaerts' contention that Suntec's Count V claim for attorney's fees should be dismissed. In Count V, Suntec "requests that this Court use its discretion and equitable powers and [Suntec] be awarded all reasonable attorneys' fees and costs for this litigation."

(First Am. Ans. and Countercl., ¶ 100). Govaerts argues that this claim should be dismissed because it "simply reiterates the prayer for attorneys' fees already set forth in the Counterclaim's prayer for relief" and "does not state a cause of action." (Brief, p. 4). Govaerts also argues that Suntec USA is not entitled to its attorneys' fees, and the request should be stricken, because it has not cited a relevant statute allowing the award of such fees. Id. (citing Aetna Cas. & Sur. Co. v. Com., 179 S.W.3d 830, 842 (Ky. 2005) (noting "with the exception of a specific contractual provision allowing for recovery of attorneys' fees or a fee-shifting statute, . . . each party assumes responsibility for his or her attorneys' fees."). Suntec counters that the Court has discretion to grant attorneys' fees based on the specific facts and circumstances of the case. (Response, p. 33) (citing Kentucky State Bank v. AG Services, Inc., 663 S.W.2d 754, 755 (Ky. Ct. App. 1984) (explaining that the American rule "does not . . . abolish the equitable rule that an award of counsel fees is within the discretion of the court depending on the circumstances of each particular case.")). Because it is unclear at this time whether an award of attorney's fees will be warranted, see Chambers v. NASCO, Inc., 501 U.S. 32, 46-47 (1991), the motion will be denied.

    B. Brown's Counterclaim

Brown's counterclaim against Govaerts is based on an alleged "Certificate" in which Govaerts agreed to indemnify Brown for liability based on misrepresentations made in the SPA. Brown does not provide this "Certificate" but argues that it is "separate" from the SPA. Govaerts responds by arguing that Brown's claim is covered by the SPA, either directly because Brown's complaint states that "Brown hereby asserts against Govaerts this

claim for indemnification pursuant to Section 11.1(a) of the Stock Purchase Agreement . . . ." (Reply, p. 2) (quoting Complaint, ¶ 9), or indirectly because Section 11.5(b) states that "the exclusive remedy for breaches of this SPA including . . . *in any certificate delivered pursuant to this SPA*" is indemnification. (Reply, p. 2) (emphasis added). The Court agrees with Govaerts that Brown's counterclaim for indemnity arises under the SPA. Brown's counterclaim therefore fails for the same reason Suntec's Count I counterclaims fail: it is barred by the contractual limitations period.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** as to Suntec's counterclaims for breach of contract and indemnity (Count 1), Suntec's claim for fraud in the inducement (Count 3), and Brown's counterclaim for indemnity. It is **DENIED** as to Suntec's counterclaim for breach of fiduciary duty (Count 2), counterclaim for fraud (Count 4), and request for attorney's fees. Brown's request to replead his counterclaim is **DENIED** as **MOOT**.

cc. Counsel of Record